UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

HAROLD VERLEY,

                Plaintiff,

v.
                                       9:05-CV-1251
                                       (LEK/GHL)
GLENN GOORD; LESTER N. WRIGHT;
JOHN BURGE; JOHN MCANANY;
PANG KOOI; HOLLY COLLETTE; and
UNITED CORR. MANAGED CARE, INC.,

                Defendants.
_____

APPEARANCES:                            OF COUNSEL:

HAROLD VERLEY, 90-T-3070
  Plaintiff, *Pro Se*
Mid-State Correctional Facility
P.O. Box 2500
Marcy, NY 13403

HON. ANDREW M. CUOMO                ED J. THOMPSON, ESQ..
Attorney General for the State of New York    Assistant Attorney General
  Counsel for Defendants
615 Erie Boulevard West, Suite 102
Syracuse, NY 13204

GEORGE H. LOWE, United States Magistrate Judge[1]

## <u>REPORT-RECOMMENDATION</u>

       This *pro se* prisoner civil rights action, filed pursuant to 42 U.S.C. § 1983, has been

referred to me for Report and Recommendation by the Honorable Lawrence E. Kahn, Senior

United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c) of the Local

---

[1]     I would like to thank my summer intern Lindsay A. Getman for her assistance in the researching and drafting of this Report-Recommendation.

Rules of Practice for this Court.  Generally, in his Complaint, Harold Verley ("Plaintiff") alleges

that six individuals employed by the New York State Department of Correctional Services

("DOCS"), and a healthcare provider employed by DOCS, violated his rights under the First,

Eighth, Eleventh and Fourteenth Amendments to the United States Constitution, the Health

Insurance Portability and Accountability Act ("HIPAA"), and various provisions of the New

York State Constitution, between April 30, 2003, and September 28, 2005, at Auburn

Correctional Facility ("Auburn C.F."), when they, *inter alia*, (1) were deliberately indifferent to

his serious medical needs (arising from, among other things, his Hepatitis C viral infection, his

painful neuropathy condition, and his need for medical footwear), and (2) breached his right to

privacy by improperly disclosing his confidential medical information to correctional officers and

inmates.  (*See generally* Dkt. No. 1 [Plf.'s Compl.].)

Currently pending before the Court is Defendants' motion for summary judgment

pursuant to Fed. R. Civ. P. 56.  (Dkt. No. 46.)  Plaintiff has not opposed the motion, despite

having been specifically advised of the consequences of failing to do so, and having been granted

two extensions of the deadline by which to do so.  (Dkt. No. 46, Part 1 [Defs.' Notice to Plf.];

Dkt. Nos. 47, 49 [Extension Orders of Court].)  Under the circumstances, I recommend that

Defendants' motion for summary judgment be granted, and that Plaintiff's Complaint be

dismissed with prejudice.

I.      BACKGROUND

A.      Summary of Plaintiff's Complaint

Construed with the extra-liberal leniency normally afforded to the pleadings drafted by

*pro se* plaintiffs in civil rights cases,[2] Plaintiff's 75-paragraph Complaint asserts the following

seven claims against Defendants.  (Dkt. No. 1, Part 1 [Plf.'s Compl.].)[3]

Deliberate Indifference to Plaintiff's Hepatitis C Condition

Plaintiff alleges that Defendant **Kooi** denied him adequate care for his Hepatitis C

condition by failing to permit him to receive a second liver biopsy in order to determine whether

the status of his liver condition had changed (by determining the level of fibrosis and scarring in

his liver).  (*Id*. at ¶¶ 31, 33, 59 & "Wherefore" Section.)

Plaintiff also alleges that Defendant **Wright** wrongfully denied his right to receive

PegInterferon for his Hepatitis C condition, in part by (falsely) reasoning that the Food and Drug

Administration has not approved the use of such drug for patients who did not respond to

---

[2]      Generally, the pleadings of *pro se* litigants are construed with even more liberality than is used to construe the pleadings of represented litigants under Fed. R. Civ. P. 8.  *Compare* Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice.") *with Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] *pro se* complaint . . . must be held to less stringent standards than formal pleadings drafted by lawyers . . . .") [internal quotation marks and citation omitted], *accord*, *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007).  "This is particularly so when the *pro se* plaintiff alleges that [his or] her civil rights have been violated."  *Sealed Plaintiff v. Sealed Defendant # 1*, No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug. 12, 2008) [citation omitted].

[3]      Due to the special leniency afforded to Plaintiff, these seven claims are broader than, and do not correspond directly to, Plaintiff's stated seven "causes of action," due to various redundancies and omissions contained in those seven causes of action.  (*Compare* Dkt. No. 1, Part 1, ¶¶ 59-71 [Plf.'s Compl., asserting his seven "causes of action"] *with* Dkt. No. 1, Part 1, ¶¶ 22-58 [Plf.'s Compl., asserting his specific factual allegations against each of the seven Defendants].)

"regular" Interfreon, and in part by failing to implement a state-wide system to monitor prisoners afflicted with Hepatitis C in prisons.  (*Id.* at ¶¶ 36-42, 66 & "Question[s] Before the Court.")

<u>Deliberate Indifference to Plaintiff's Painful Neuropathy Condition</u>

Plaintiff alleges that Defendant **Kooi** refused to provide him with adequate medical treatment to manage his pain for his peripheral neuropathy condition by discontinuing the pain-management medicine that he had been receiving when he arrived at Auburn C.F., and replacing it with other pain-management medication, which carried a risk of adverse side effects on his liver.  (*Id.* at ¶¶ 22-24, 26-28, 27-a, 28-a, 29-31, 33, 42, 60 & "Wherefore" Section.)

Plaintiff also alleges that Defendant **Wright** failed to instruct the medical department at Auburn C.F. in how to properly maintain inmates' pain management regimens, despite having received Plaintiff's numerous complaints of his pain management regimen.  (*Id.* at ¶¶ 39, 43, 67.)

<u>Deliberate Indifference to Plaintiff's Need for Medical Footwear</u>

Plaintiff alleges that Defendant **Kooi** failed to properly note (in Plaintiff's medical records) Plaintiff's concerns regarding his need for medical footwear, and that he wrongfully denied medical footwear to Plaintiff, contrary to an orthopedic surgeon's recommendation that Plaintiff receive medical footwear.  (*Id.* at ¶¶ 25, 29, 61.)

Plaintiff also alleges that Defendants **Kooi** and **United Correctional Managed Care, Inc.**, wrongfully denied him access to an orthopedic specialist and medical footwear solely because of cost and not at all because of medical reasons.  (*Id.* at ¶¶ 25, 31, 55-57, 65.)

<u>Breach of Plaintiff's Right to Medical Privacy</u>

Plaintiff alleges that Defendants **McAnany**, **Kooi**, and **Burge** cooperated with one another to wrongfully disclose his private medical information to correctional officers and

4

inmates by issuing a memorandum, on May 24, 2005, directing inmates possessing the medications Gabapentin or Neurotinin to surrender those medications to correctional officers, and by causing announcements to be made regarding that recall over the prison's public address system.  (*Id*. at ¶¶ 44-47, 48-54, 60[d], 64.)

<u>Discrimination Against Plaintiff for Needing Pain Medication</u>

Plaintiff alleges that Defendant **Kooi** discriminated against him on August, 21, 2003, by discontinuing his pain-management medication for his neuropathy condition because he needed, and sought, pain-management therapy.  (*Id*. at ¶¶ 28-a, 60[c].)

<u>Retaliation Against Plaintiff for Complaint About Medical Care</u>

Plaintiff alleges that Defendant **Kooi** retaliated against him for engaging in constitutionally protected activity, specifically, making various of the above-described complaints about his medical care.  (*Id*. at ¶¶ 30, 32, 35, "Wherefore" Section & "Preliminary Statement" [citing the First Amendment among the constitutional provisions under which his claims arise].)

<u>Failure to Respond to Plaintiff's Medical Complaints</u>

Plaintiff alleges that Defendants **Kooi** and **Collett** refused to adequately respond to his above-described medical needs and investigate his complaints.  (*Id*. at ¶¶ 32-35, 62, 63.)

Plaintiff also alleges that Defendants **Burge** and **Goord** failed to address his above-described complaints (contained in his grievances and letters) regarding his inadequate medical care.  (*Id*. at ¶¶ 48-49, 51-54, 68, 69.)

Finally, it should be noted that Defendants are sued in both their individual and official capacities.  (*Id*. at ¶¶ 6, 8, 10, 12, 13.)

5

**B.      Summary of Grounds in Support of Defendants' Motion**

Defendants' motion is premised on the following eight grounds: (1) the Eleventh Amendment bars Plaintiff's claims against Defendants in their official capacities; (2) Plaintiff has failed to serve Defendant United Correctional Managed Care; (3) Plaintiff has failed to adduce evidence that Defendants were deliberately indifferent to any of his serious medical needs; (4) Plaintiff has failed to adduce evidence that Defendants violated any of his rights to privacy or confidentiality through their recall of the medications Gabapentin and Neurotinin; (5) Plaintiff has failed to adduce evidence that Defendants violated any of his rights under the Eleventh or Fourteenth Amendments; (6) Plaintiff has failed to adduce evidence that Defendants Goord, Wright, Burge and Collette were personally involved in the constitutional violations alleged; (7) Defendants are protected from liability, as a matter of law, by the doctrine of qualified immunity; and (8) the Court should decline to exercise jurisdiction over Plaintiff's pendent state law claims. (Dkt. No. 46, Part 4, at 1, 11-24 [Defs.' Memo. of Law].)

## II.   LEGAL STANDARD GOVERNING UNOPPOSED MOTIONS FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining whether a genuine issue of material[4] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences

---

[4]      A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

against the moving party.[5]

However, when the moving party has met its initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."[6]  The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts."[7]  Rather, "[a] dispute regarding a material fact is *genuine* if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[8]

What this burden-shifting standard means when a plaintiff has failed to respond to a defendant's motion for summary judgment is that "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically."[9]

---

[5]     *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) [citation omitted]; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) [citation omitted].

[6]     Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations . . . of the [plaintiff's] pleading, but the [plaintiff's] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the [plaintiff] does not so respond, summary judgment, if appropriate, shall be entered against the [plaintiff]."); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

[7]     Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations . . . of the [plaintiff's] pleading . . . ."); *Matsushita*, 475 U.S. at 585-86; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

[8]     *Ross v. McGinnis*, 00-CV-0275, 2004 WL 1125177, at *8 (W.D.N.Y. Mar. 29, 2004) [internal quotations omitted] [emphasis added].

[9]     *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).

7

Rather, practically speaking, the Court must (1) determine what material facts, if any, are *disputed* in the record presented on the defendants' motion, and (2) assure itself that, based on those *undisputed* material facts, the law indeed warrants judgment for the defendants.[10] However, the plaintiff's failure to respond to the defendant's motion for summary judgment lightens the defendant's burden on the motion.

More specifically, where a plaintiff has failed to properly respond[11] to a defendant's statement of material facts, contained in its Statement of Material Facts (a/k/a its "Rule 7.1 Statement"), the facts as set forth in that Rule 7.1 Statement will be accepted as true[12] to the

---

[10]        *See Champion*, 76 F.3d at 486 ("Such a motion may properly be granted only if the facts as to which there is no genuine dispute show that . . . the moving party is entitled to a judgment as a matter of law.") [internal quotation marks and citation omitted]; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.) (stating that, where a plaintiff has failed to respond to a defendant's motion for summary judgment, "[t]he Court must review the merits of Plaintiff's claims"). This requirement (that the Court determine, as a threshold matter, that the movant's motion has merit) is also recognized by Local Rule 7.1(b)(3) of the Local Rules of Practice for this Court, which provides that "the non-moving party's failure to file or serve . . . [opposition] papers . . . shall be deemed as consent to the granting . . . of the motion . . . unless good cause is shown," *only where the motion has been "properly filed" and "the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein."*  N.D.N.Y. L.R. 7.1(b)(3) [emphasis added].

[11]        *See* N.D.N.Y. L.R. 7.1(a)(3) ("The opposing party shall file a response to the Statement of Material Facts.  The non-movant's response shall mirror the movant's Statements of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs.  Each denial shall set forth a specific citation to the record where the factual issue arises.").

[12]        *See* N.D.N.Y. L.R. 7.1(a)(3) ("Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.") [emphasis in original].

extent that (1) those facts are supported by the evidence in the record,[13] and (2) the non-moving

party, if he is proceeding *pro se*, has been specifically advised of the potential consequences of

failing to respond to the movant's motion for summary judgment.[14]  Here, I note that Plaintiff

was so advised by Defendants on or about July 14, 2007.  (Dkt. No. 18, Part 1, at 1-2

[Defendants' Notice of Motion].)  Clearly, Plaintiff was aware of these potential consequences

since he requested (and was granted) *two* extensions of the response-filing-deadline.  (Dkt. Nos.

47, 49.)  In addition, I note that, before he was required to file his opposition to Defendants'

_____

[13]      *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 243 (2d
Cir. 2004) ("[W]here the non-movant party chooses the perilous path of failing to submit a
response to a summary judgment motion, the district court may not grant the motion without first
examining the moving party's submission to determine if it has met its burden of demonstrating
that no material issue of fact remains for trial. . . .  If the evidence submitted in support of the
summary judgment motion does not meet the movant's burden of production, then summary
judgment must be denied even if no opposing evidentiary matter is presented. . . . [I]n
determining whether the moving party has met this burden of showing the absence of a genuine
issue for trial, the district court may not rely solely on the statement of undisputed facts contained
in the moving party's Rule 56.1 Statement.  It must be satisfied that the citation to evidence in
the record supports the assertion.") [internal quotation marks and citations omitted]; *Govan v.
Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. 2003) (Sharpe, M.J.) ("In this case, [the plaintiff]
did not file a statement of undisputed facts in compliance with Local Rule 7.1(a)(3).
Consequently, the court will accept the *properly supported* facts contained in the defendants' 7.1
statement.") [emphasis added]; *Adirondack Cycle & Marine, Inc. v. Am. Honda Motor Co., Inc.*,
00-CV-1619, 2002 U.S. Dist. LEXIS 4386, at *2-3 (N.D.N.Y. Mar. 18, 2002) (McAvoy, J.)
("Local Rule 7.1 requires a party opposing summary judgment to respond to the statement of
undisputed material facts submitted by the movant.  To the extent such facts are not controverted,
*the properly supported facts* will be taken as true.") [emphasis added; citation omitted]; *cf.* Fed.
R. Civ. P. 83(a)(1) ("A local rule shall be consistent with . . . Acts of Congress and rules adopted
under 28 U.S.C. §§ 2072 and 2075 [which include the Federal Rules of Civil Procedure] . . . .");
Fed. R. Civ. P. 56(e) (requiring that, "if the non-movant does not . . . respond [to a summary
judgment motion], summary judgment, *if appropriate*, shall be entered against the non-movant,"
and requiring that, as a threshold matter, the motion for summary judgment must be "made *and
supported* as provided in this rule") [emphasis added].

[14]      *See Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996); *cf.* N.D.N.Y. L.R. 56.2
(imposing on movant duty to provide such notice to *pro se* opponent).

motion for summary judgment in this case on November 30, 2007, Plaintiff had gained first-hand

knowledge of the requirements of opposing a motion for summary judgment in a similar prisoner

civil rights action that he had filed.  *See Verley v. Wright*, 02-CV-1182, Plf.'s Opp. to Defs.'

Motion for Summ. Judg. (S.D.N.Y. filed Sept. 27, 2007).

Similarly, where a plaintiff has failed to respond to a defendant's properly filed and

facially meritorious memorandum of law (submitted in support of its motion for summary

judgment), the plaintiff is deemed to have "consented" to the legal arguments contained in that

memorandum of law under Local Rule 7.1(b)(3) of the Local Rules of Practice for this Court.[15]

Stated another way, where a defendant has properly filed a memorandum of law (in support of a

properly filed motion for summary judgment), and the plaintiff has failed to respond to that

memorandum of law, the only remaining issue is whether the legal arguments advanced in the

---

[15]        N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the
Court determines that the moving party has met its burden to demonstrate entitlement to the
relief requested therein, the non-moving party's failure to file or serve any papers as required by
this Rule shall be deemed as consent to the granting or denial of the motion, as the case may be,
unless good cause be shown."); N.D.N.Y. L.R. 7.1(a) (requiring opposition to motion for
summary judgment to contain, *inter alia*, a memorandum of law); *cf*. Fed. R. Civ. P. 56(e)
("When a motion for summary judgment is made and supported as provided in this rule, an
adverse party may not rest upon the mere allegations or denials of the adverse party's pleading,
but the adverse party's *response* . . . must set forth specific facts showing that there is a genuine
issue for trial.  If the adverse party does not so *respond*, summary judgment, if appropriate, shall
be entered against the adverse party.") [emphasis added]; *see*, *e.g.*, *Beers v. GMC*, 97-CV-0482,
1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming
plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their
motion for summary judgment as consent by plaintiff to the granting of summary judgment for
defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3];
*Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29,
2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to
exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's]
testimony" on that ground).

defendant's memorandum of law are *facially meritorious*.[16]  A defendant's burden in making legal arguments that are facially meritorious has appropriately been characterized as "modest."[17]

Implied in the above-stated standard is the fact that, where a non-movant fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute, even if that non-movant is proceeding *pro se*.[18]

---

[16]     *Hernandez v. Nash*, 00-CV-1564, 2003 U.S. Dist. LEXIS 16258, at *7-8 (N.D.N.Y. Sept. 10, 2003) (Sharpe, M.J.) (before a motion to dismiss may be granted under Local Rule 7.1[b][3], "the court must review the motion to determine whether it is *facially meritorious*") [emphasis added; citations omitted]; *accord*, *Topliff v. Wal-Mart Stores East LP*, 04-CV-0297, 2007 U.S. Dist. LEXIS 20533, at *28 & n.43 (N.D.N.Y. March 22, 2007) (Lowe, M.J.); *Hynes v. Kirkpatrick*, 05-CV-0380, 2007 U.S. Dist. LEXIS 24356, at *5-6 & n.2 (N.D.N.Y. March 21, 2007) (Lowe, M.J.); *Sledge v. Kooi*, 04-CV-1311, 2007 U.S. Dist. LEXIS 26583, at *28-29 & n.40 (N.D.N.Y. Feb. 12, 2007) (Lowe, M.J.), *adopted by* 2007 U.S. Dist. LEXIS 22458 (N.D.N.Y. March 28, 2007) (McAvoy, J.); *Kele v. Pelkey*, 03-CV-0170, 2006 U.S. Dist. LEXIS 95065, at *5 & n.2 (N.D.N.Y. Dec. 19, 2006) (Lowe, M.J.), *adopted by* 2007 U.S. Dist. LEXIS 4336 (N.D.N.Y. Jan. 22, 2007) (Kahn, J.).

[17]     *See Ciaprazi v. Goord*, 02-CV0915, 2005 WL 3531464, at *8 (N.D.N.Y. Dec. 22, 2005) (Sharpe, J.; Peebles, M.J.) (characterizing defendants' threshold burden on a motion for summary judgment as "modest") [citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986)]; *accord*, *Saunders v. Ricks*, 03-CV-0598, 2006 WL 3051792, at *9 & n.60 (N.D.N.Y. Oct. 18, 2006) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.), *Smith v. Woods*, 03-CV-0480, 2006 WL 1133247, at *17 & n.109 (N.D.N.Y. Apr. 24, 2006) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.); *cf. Race Safe Sys. v. Indy Racing League*, 251 F. Supp.2d 1106, 1109-1110 (N.D.N.Y. 2003) (Munson, J.) (reviewing whether record contradicted defendant's arguments, and whether record supported plaintiff's claims, in deciding unopposed motion to dismiss, under Local Rule 7.1[b][3]); *Wilmer v. Torian*, 96-CV-1269, 1997 U.S. Dist. LEXIS 16345, at *2 (N.D.N.Y. Aug. 29, 1997) (Hurd, M.J.) (applying prior version of Rule 7.1[b][3], but recommending dismissal because of plaintiff's failure to respond to motion to dismiss *and* the reasons set forth in defendants' motion papers), *adopted by* 1997 U.S. Dist. LEXIS 16340, at *2 (N.D.N.Y. Oct. 14, 1997) (Pooler, J.); *accord*, *Carter v. Superintendent Montello*, 95-CV-989, 1996 U.S. Dist. LEXIS 15072, at *3 (N.D.N.Y. Aug. 27, 1996) (Hurd, M.J.), *adopted by* 983 F. Supp. 595 (N.D.N.Y. 1996) (Pooler, J.).

[18]     *See Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) ("We agree with those circuits that have held that Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.") [citations omitted]; *accord*, *Lee v. Alfonso*, No. 04-1921, 2004 U.S. App. LEXIS 21432 (2d Cir.

After all, even *pro se* plaintiffs must obey the Court's procedural rules.[19]  However, in the event

the district court chooses to conduct such an independent review of the record, any verified

complaint filed by the plaintiff should be treated as an affidavit.[20]  Here, I note that Plaintiff's

Complaint contains a verification pursuant to 28 U.S.C. § 1746.  (Dkt. No. 1.)

  That having been said, to be sufficient to create a factual issue for purposes of a summary

judgment motion, an affidavit must, among other things, not be conclusory.[21]  An affidavit is

_____

Oct. 14, 2004), *aff'g*, 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at *12-13 (N.D.N.Y. Feb. 10, 2004) (Scullin, J.) (granting motion for summary judgment); *Fox v. Amtrak*, 04-CV-1144, 2006 U.S. Dist. LEXIS 9147, at *1-4 (N.D.N.Y. Feb. 16, 2006) (McAvoy, J.) (granting motion for summary judgment); *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.) (granting motion for summary judgment); *Prestopnik v. Whelan*, 253 F. Supp.2d 369, 371-372 (N.D.N.Y. 2003) (Hurd, J.).

  [19] *See McNeil v. U.S.,* 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed . . .  we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California*, 422 U.S. 806, 834, n. 46 (1975) ("The right of self-representation is not a license . . .  not to comply with relevant rules of procedural and substantive law."); *Edwards v. I.N.S.*, 69 F.3d 5, 8 (2d Cir. 1995) ("[W]hile a *pro se* litigant's pleadings must be construed liberally, . . . *pro se* litigants generally are required to inform themselves regarding procedural rules and to comply with them.") [citations omitted].

  [20] *See Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d. Cir. 2004) ("[A] verified pleading . . . has the effect of an affidavit and may be relied upon to oppose summary judgment."); *Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001) (holding that plaintiff "was entitled to rely on [his verified amended complaint] in opposing summary judgment"), *cert. denied*, 536 U.S. 922 (2002); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1993) ("A verified complaint is to be treated as an affidavit for summary judgment purposes.") [citations omitted].

  [21] *See* Fed. R. Civ. P. 56(e) (requiring that non-movant "set forth specific facts showing that there is a genuine issue for trial"); *Patterson*, 375 F.3d at 219 (2d. Cir. 2004) ("Nor is a genuine issue created merely by the presentation of assertions [in an affidavit] that are conclusory.") [citations omitted]; *Applegate v. Top Assoc.*, 425 F.2d 92, 97 (2d Cir. 1970) (stating that the purpose of Rule 56[e] is to "prevent the exchange of affidavits on a motion for summary judgment from degenerating into mere elaboration of conclusory pleadings").

conclusory if, for example, its assertions lack any supporting evidence or are too general.[22]

Finally, even where an affidavit (or verified complaint) is nonconclusory, it may be insufficient to create a factual issue where it is (1) "largely unsubstantiated by any other direct evidence" and (2) "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint."[23]

---

[22]    *See, e.g.*, *Bickerstaff v. Vassar Oil*, 196 F.3d 435, 452 (2d Cir. 1998) (McAvoy, C.J., sitting by designation) ("Statements [for example, those made in affidavits, deposition testimony or trial testimony] that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.") [citations omitted]; *West-Fair Elec. Contractors v. Aetna Cas. & Sur.*, 78 F.3d 61, 63 (2d Cir. 1996) (rejecting affidavit's conclusory statements that, in essence, asserted merely that there was a dispute between the parties over the amount owed to the plaintiff under a contract); *Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir. 1985) (plaintiff's allegation that she "heard disparaging remarks about Jews, but, of course, don't ask me to pinpoint people, times or places. . . .  It's all around us" was conclusory and thus insufficient to satisfy the requirements of Rule 56[e]), *cert. denied*, 474 U.S. 829 (1985); *Applegate*, 425 F.2d at 97 ("[Plaintiff] has provided the court [through his affidavit] with the characters and plot line for a novel of intrigue rather than the concrete particulars which would entitle him to a trial.").

[23]    *See, e.g.*, *Jeffreys v. City of New York*, 426 F.3d 549, 554-55 (2d Cir. 2005) (affirming grant of summary judgment to defendants in part because plaintiff's testimony about an alleged assault by police officers was "largely unsubstantiated by any other direct evidence" and was "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint") [citations and internal quotations omitted]; *Argus, Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir. 1986) (affirming grant of summary judgment to defendants in part because plaintiffs' deposition testimony regarding an alleged defect in a camera product line was, although specific, "unsupported by documentary or other concrete evidence" and thus "simply not enough to create a genuine issue of fact in light of the evidence to the contrary"); *Allah v. Greiner*, 03-CV-3789, 2006 WL 357824, at *3-4 & n.7, 14, 16, 21 (S.D.N.Y. Feb. 15, 2006) (prisoner's verified complaint, which recounted specific statements by defendants that they were violating his rights, was conclusory and discredited by the evidence, and therefore insufficient to create issue of fact with regard to all but one of prisoner's claims, although verified complaint was sufficient to create issue of fact with regard to prisoner's claim of retaliation against one defendant because retaliatory act occurred on same day as plaintiff's grievance against that defendant, whose testimony was internally inconsistent and in conflict with other evidence); *Olle v. Columbia Univ.*, 332 F. Supp.2d 599, 612 (S.D.N.Y. 2004) (plaintiff's deposition testimony was insufficient evidence to oppose defendants' motion for summary judgment where that testimony

III.    ANALYSIS

    A.    **Whether the Eleventh Amendment Bars Plaintiff's Claims Against Defendants in Their Official Capacities**

Plaintiff sues Defendants in both their individual and official capacities. (Dkt. No. 1, Part 1, ¶¶ 6, 8, 10, 12, 13 [Plf.'s Compl.].) Defendants argue that Plaintiff's claims against Defendants in their official capacities should be dismissed under the Eleventh Amendment. (Dkt. No. 46, Part 4, at 11 [Defs.' Memo. of Law].) Plaintiff has failed to oppose that argument (or any argument, or fact, asserted in Defendants' motion papers), despite having been specifically advised of the consequences of failing to do so, and having been granted two extensions of the deadline by which to do so. (Dkt. No. 46, Part 1 [Defs.' Notice to Plf.]; Dkt. Nos. 47, 49 [Extension Orders of Court].)

As explained above in Part II of this Report-Recommendation, where a plaintiff has failed to respond to a defendant's properly filed and facially meritorious memorandum of law (submitted in support of its motion for summary judgment), the plaintiff is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3) of the Local Rules of Practice for this Court. Stated another way, where a defendant has properly filed a memorandum of law (in support of a properly filed motion for summary judgment), and the plaintiff has failed to respond to a legal argument asserted in that memorandum of law, the only remaining issue is whether that legal argument is *facially meritorious*. A defendant's burden in making legal arguments that are facially meritorious has

---

recounted specific allegedly sexist remarks that "were either unsupported by admissible evidence or benign"), *aff'd*, 136 F. App'x 383 (2d Cir. 2005) (unreported decision, cited not as precedential authority but merely to show the case's subsequent history, in accordance with Second Circuit Local Rule § 0.23).

appropriately been characterized as "modest."

Here, I find that Defendants' Eleventh Amendment immunity argument is, at the very least, facially meritorious.  Moreover, even if I were to scrutinize Defendants' argument under the more rigorous standard appropriate when an argument is opposed, I would find that Defendants' argument has merit.

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity."[24]  The Eleventh Amendment also bars a suit (including an action pursuant to 42 U.S.C. § 1983) against a state official acting in his *official* capacity.[25]  This is because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . .  As such, it is no different from a suit against the State itself. . . ."[26]  To the extent that Plaintiff sues Defendants in their official capacities, his claims must be

[24]     *See* U.S. Const. amend XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana*, 134 U.S. 1, 10-21 (1890); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) [citation omitted].

[25]     *See Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state officials in their official capacities."); *Farid v. Smith*, 850 F.2d 917, 921 (2d Cir. 1988) ("The Eleventh Amendment bars recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if he is sued in his 'individual' or 'personal' capacity.").

[26]     *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *accord*, *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.  It is not a suit against the official personally, for the real party in interest is the entity."); *Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his official capacity, such a suit is

15

dismissed for lack of subject-matter jurisdiction.[27]

     For these reasons, I recommend that, to the extent that Plaintiff's claims are asserted against Defendants in their official capacities (as opposed to being asserted against them in their individual capacities), those claims be dismissed under the Eleventh Amendment.

**B.    Whether Plaintiff's Claims Against Defendant United Correctional Managed Care Should Be Dismissed for Failure to Serve**

Defendants argue that Plaintiff's claims against Defendant United Correctional Managed Care should be dismissed due to Plaintiff's failure to serve it with process.  (Dkt. No. 46, Part 4, at 1, n.1 [Defs.' Memo. of Law].)  Plaintiff has failed to oppose that argument, despite having been specifically advised of the consequences of failing to do so, and having been granted two extensions of the deadline by which to do so.  Where a plaintiff has failed to respond to a defendant's properly filed and facially meritorious memorandum of law (submitted in support of its motion for summary judgment), the plaintiff is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).  Here, I find that Defendants' failure-to-serve argument is, at the very least, facially meritorious.  Moreover, even if I were to scrutinize Defendants' argument under the more rigorous standard appropriate when an argument is opposed, I would find that Defendants' argument has merit.

On December 7, 2005, I ordered, *inter alia*, that (1) "[t]he Clerk shall issue summonses

_____

deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state.").

[27]    *See McGinty v. State of New York*, 251 F.3d 84, 100 (2d Cir. 2001) ("Where it has been successfully demonstrated that a defendant is entitled to sovereign immunity under the Eleventh Amendment, the federal court lacks subject matter jurisdiction over the case, and "the case must be stricken from the docket.") [citation omitted]; *see also* Fed. R. Civ. P. 12(h)(3).

and forward them, along with copies of the Complaint, to the United States Marshall for service upon the named Defendants," and (2) "Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action." (Dkt. No. 8, at 4-6.) Thereafter, the Clerk's Office wrote Plaintiff a letter requesting him to complete USM 285 Forms for each of the remaining Defendants. However, Plaintiff never returned a USM 285 Form containing a valid address for Defendant United Correctional Managed Care, Inc. As a result, the summons for that Defendant was returned unexecuted on April 7, 2006. (Dkt. No. 17 ["Summons Returned Unexecuted" for Def. United Corr. Managed Care, Inc.].) On May 10, 2006, the Clerk's Office reissued a summons for that Defendant. (*See* Docket Entry dated May 10, 2006.) However, again, Plaintiff never returned a USM 285 Form containing a valid address for Defendant United Correctional Managed Care, Inc. As a result, the summons for that Defendant was returned unexecuted on August 7, 2006. (Dkt. No. 22 ["Summons Returned Unexecuted" for Def. United Corr. Managed Care, Inc.].)

For these reasons, I recommend that Plaintiff's claims against Defendant United Correctional Managed Care be dismissed due to Plaintiff's failure to serve it with process. In the alternative, I recommend that Plaintiff's claims against Defendant United Correctional Managed Care should be dismissed for reasons similar to those stated below in Part III.C. and III.E. of this Report-Recommendation.

### C. Whether Plaintiff Has Failed to Adduce Evidence that Defendants Were Deliberately Indifferent to any of His Serious Medical Needs

Plaintiff alleges that, between April 30, 2003, and September 28, 2005, at Auburn C.F., Defendants Kooi, Wright, Collett, Burge, Goord, and United Correctional Managed Care were

17

deliberately indifferent to his serious medical needs, including (1) his Hepatitis C condition, (2) his painful neuropathy condition, and (3) his need for medical footwear.  *See*, *supra*, Part I.A. of this Report-Recommendation.  Defendants argue that, even assuming that Plaintiff's medical needs were sufficiently serious for purposes of the Eighth Amendment, no record evidence exists that any of the above-referenced Defendants exhibited the sort of reckless mental state required for them to be *deliberately indifferent* to those serious medical needs: rather, argue Defendants, the record rather clearly establishes that Plaintiff received, at the very least, adequate medical care during the time period in question.  (Dkt. No. 46, Part 4, at 12-15 [Defs.' Memo. of Law].)  Plaintiff has failed to oppose that argument, despite having been specifically advised of the consequences of failing to do so, and  having been granted two extensions of the deadline by which to do so.  Based on a review of the record, I find that Defendants' argument is, at the very least, facially meritorious.  Moreover, even if I were to scrutinize Defendants' argument under the more rigorous standard appropriate when an argument is opposed, I would find that Defendants' argument has merit.

Each of the facts asserted in Defendants' Rule 7.1 Statement regarding the health care that Plaintiff received at Auburn C.F. is supported by accurate record citations.  (*See* Dkt. No. 46, Part 3, ¶¶ 2-40, 51-62 [Defs.' Rule 7.1 Statement].)  Because Plaintiff has failed to controvert those factual assertions, the assertions are deemed admitted under Local Rule 7.1  Without burdening this Report-Recommendation with footnotes repeating each of the record documents supporting each of the referenced facts asserted by Defendants, I will recite the most pertinent of those facts.

Recitation of Undisputed Record Evidence
Regarding Plaintiff's Medical Care at Auburn C.F.

Plaintiff was housed at Auburn C.F. from April 30, 2003, until September 28, 2005.

Upon his arrival at Auburn C.F., a nurse reviewed his medical chart and noted the following in

his DOCS ambulatory health records ("AHR"): (1) Plaintiff was Hepatitis C positive; (2) he was

using a transcutaneous electrical nerve-stimulation ("TENS") unit and medications to treat his

chronic back pain and peripheral neuropathy condition, including a Duragesic patch, Elavil,

Vistaril and Neurontin; (3) he had bilateral hearing loss and hearing aids; (4) there was a March

10, 2003, note that there was no clinical data to justify his pain-management medications; (5)

medications and scripts needed to be ordered as appropriate; (6) whether he required a bottom

bunk needed to be determined; and (7) the use of his TENS unit needed to be investigated.

Plaintiff was seen by a physician's assistant named Laux within a day of his arrival at

Auburn C.F.  At this initial appointment on May 1, 2003, Plaintiff and P.A. Laux discussed

Plaintiff's medications.  P.A. Laux felt that Plaintiff should be assessed by the pain clinic before

continuing with the drug MS Contin.  In place of the MS Contin, P.A. Laux prescribed two

Percoset tablets three times a day, as well the medications Elavil and Vistaril and a TENS unit.

All of the aforementioned prescriptions were to assist Plaintiff with pain management until he

could be seen by the pain clinic.  Plaintiff saw Defendant Kooi on May 5, 2003, and at that time

he had no complaints.

On July 17, 2003, Plaintiff went to the SUNY Upstate pain management clinic.  A

clinician recommended that Plaintiff no longer receive Percocet in order to reduce his exposure

to Tylenol.  Instead, the clinician recommended that Plaintiff be given Oxycontin or Methadone,

19

that his dose of Neurontin be gradually increased to 3600 m.g. per day, and that he continue on

Elavil and Motrin, as needed.  P.A. Laux reviewed the July 17, 2003, consult report on July 22,

2003, and ordered that Plaintiff's prescription for Percocet be discontinued and that he be given 5

m.g. of Methadone twice a day.

On August 21, 2003, Defendant Kooi instituted a new Auburn C.F. policy requiring that

any inmate needing narcotics for pain control be admitted to the infirmary for treatment and

observation. Accordingly, Plaintiff's prescription for Methadone was discontinued on August 26,

2003. At approximately 10:00 a.m. on September 6, 2003, Plaintiff was admitted to the

infirmary for pain control management.  A physician named Graceffo ordered that Plaintiff was

to receive Tylenol #3 with Codeine along with Elavil, but not Percocet.  On September 8, 2003,

Plaintiff signed out of the infirmary on Neurontin.  Plaintiff's AHR noted that he was given

Tylenol #3 by Dr. Graceffo, but that he refused it.

On October 2, 2003, Plaintiff saw Defendant Kooi and complained of a tingling sensation

on his feet.  Defendant Kooi increased the amount of Neurontin and Elavil that Plaintiff received.

He also ordered an electromyogram ("EMG") to test Plaintiff's nerves.  Defendant Kooi also

treated Plaintiff for his dandruff and dry skin on that date.  On October 9, 2003, Plaintiff received

medical boots.  Plaintiff's EMG was conducted on October 24, 2003.  The results were normal.

On November 4, 2003, Plaintiff had a follow-up urology consult.  On November 6, 2003,

Defendant Kooi reviewed the November 4, 2003, consult report and renewed Plaintiff's

prescription for Cardura, as the urology specialist had recommended.  Defendant Kooi also

renewed this medication after Plaintiff's urology consults on May 11, 2004, November 9, 2004,

and August 9, 2005.

Defendant Kooi saw Plaintiff on January 26, 2004, for complaints of migraine headaches. He prescribed Fiorcet for the headaches, as well as Prevacid to address Plaintiff's complaints of reflux esophagitis. Dr. Kooi renewed Plaintiff's prescription for Fiorcet on February 12, 2004, April 1, 2004, May 17, 2004, June 10, 2004, and August 9, 2004.

Defendant Kooi referred Plaintiff to an audiologist after Plaintiff had complained his hearing aid was not functioning properly. Plaintiff saw the audiologist on March 8, 2004.

On April 5, 2004, Defendant Kooi saw Plaintiff for complaints of dry skin on his lip. Defendant Kooi prescribed Eucerin for Plaintiff's lip, as well as arch supports and Motrin for a bunion on Plaintiff's foot. On June 10, 2004, Defendant Kooi prescribed Zantac for Plaintiff's reflux condition. In addition, Defendant Kooi ordered a 30-day supply of Neurontin. On July 14, 2004, Defendant Kooi renewed Plaintiff's Neurontin prescription. Plaintiff also complained that his feet were discolored on that date; however, upon examination, Defendant Kooi determined that no treatment was warranted.

Defendant Kooi saw Plaintiff on July 22, 2004, and ordered that bloodwork be performed for Plaintiff's Hepatitis C condition. On August 9, 2004, Defendant Kooi approved the renewal of Plaintiff's Elavil prescription. Defendant Kooi changed the dosage of the Fiorcet that Plaintiff was receiving on August 11, 2004, and then again on August 24, 2004. During his appointment on October 14, 2004, Plaintiff complained of leg and back pain. Defendant Kooi noted in the AHR that Plaintiff's neurological studies were normal. Plaintiff also complained that he wanted medical boots; as a result, Defendant Kooi ordered an x-ray examination of both of Plaintiff's feet. In response to Plaintiff's claim that his hearing aid was broken, Defendant Kooi ordered an audiology consult. In addition, Defendant Kooi requested an alpha-fetoprotein test, which is a

21

blood test used to assist in diagnosing, *inter alia*, neoplastic conditions and hepatitis.

A bilateral x-ray of Plaintiff's feet was done on November 4, 2004.  The exam showed that the osseous and surrounding soft tissue structures were unremarkable.  On February 2, 2005, Plaintiff presented with a lump in the right axilla.  Defendant Kooi noted in the AHR that, since Plaintiff had neuropathy and that he was on Neurontin, he would add the medication Elavil.  However, Plaintiff was already on that medication.  On April 25, 2005, Plaintiff claimed that he had a collapsed arch on both feet.  Defendant Kooi noted that the x-ray conducted on November 4, 2004, showed an unremarkable arch.  Defendant Kooi also ordered an x-ray of Plaintiff's lumbo-sacral spine.  In addition, Plaintiff stated that he wanted MS Contin; however, Defendant Kooi felt that it was not indicated, since Plaintiff was on the TENS unit, Elavil and Neurontin.  The x-ray of Plaintiff's lumbo-sacral spine was conducted on April 27, 2005.  It showed that Plaintiff's spine had normal alignment and position of the bones, and that there were no bony lesions or other significant findings.

On July 21, 2005, Plaintiff presented to Defendant Kooi with hearing aid problems, for which Defendant Kooi ordered an audiology consult.  Plaintiff informed Defendant Kooi on August 29, 2005, that he was not taking his Cardura medication, stating it was "too much."  Defendant Kooi ordered a follow-up appointment with a urology specialist.  In addition, Plaintiff stated that he had treatment for his Hepatitis C condition at Green Haven C.F. in 2000, which failed.  Defendant Kooi noted in the AHR that he would check Plaintiff's liver function test.  On September 15, 2005, Defendant Kooi prescribed Flomax 0.4 m.g. for Plaintiff, and instructed that Plaintiff take it one-half hour after supper, pursuant to Plaintiff's urology consult of September 13, 2005.  On September 27, 2005, Defendant Kooi renewed Plaintiff's Neurontin prescription.

22

Because there was no FDA-approved treatment for Hepatitis C, all that could be done for

Plaintiff's Hepatitis C condition while incarcerated was to monitor it, which the medical staff at

Auburn C.F. did.

<u>Application of Law</u>

Generally, to prevail on a claim of inadequate medical care, a plaintiff must show two

things: (1) that the plaintiff had a *sufficiently serious* medical need; and (2) that the defendant

was *deliberately indifferent* to that serious medical need.  *Estelle v. Gamble*, 429 U.S. 97, 104

(1976); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).  With regard to the second

element of this test, "deliberate indifference describes a state of mind more blameworthy than

negligence."[28]  Rather, Deliberate indifference is a state of mind akin to *criminal recklessness*.[29]

---

[28]     *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) ("[D]eliberate indifference [for purposes of an Eighth Amendment claim] describes a state of mind more blameworthy than negligence."); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Murphy v. Grabo*, 94-CV-1684, 1998 WL 166840, at *4 (N.D.N.Y. Apr. 9, 1998) (Pooler, J.) ("Deliberate indifference, whether evidenced by [prison] medical staff or by [prison] officials who allegedly disregard the instructions of [prison] medical staff, requires more than negligence.  .  .  .  Disagreement with prescribed treatment does not rise to the level of a constitutional claim. . . .  Additionally, negligence by physicians, even amounting to malpractice, does not become a constitutional violation merely because the plaintiff is an inmate. . . .  Thus, claims of malpractice or disagreement with treatment are not actionable under section 1983.") [citations omitted].").

[29]     *Farmer v. Brennan,* 511 U.S. 825, 827 (1994) ("[S]ubjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the test for "deliberate indifference" under the Eighth Amendment."); *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998) ("The required state of mind [for a deliberate indifference claim under the Eighth Amendment], equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference.") [internal quotation marks and citations omitted]; *Hathaway v.*

23

Because of this standard, as the Supreme Court has observed, "[T]he question of whether . . . [certain] diagnostic techniques or forms of treatment . . . is indicated is a classic example of a matter for medical judgment.  A medical decision not to order [a particular diagnostic or treatment] measure[], does not represent cruel and unusual punishment.  At most it is medical malpractice. . . . ."  *Estelle*, 429 U.S. at 107.[30]

Here, the allegations of Plaintiff's Complaint are laden with disagreements over the medical judgments made by Defendant Kooi and others.  (*See*, *e.g.*, Dkt. No. 1, Part 1, ¶¶ 21, 22, 24, 27, 28-a [Plf.'s Compl.].)  Plaintiff himself appears to recognize this fact in his Complaint when he acknowledges that he is not a physician but he asserts that he has gained expertise in medical matters.  (*Id.* at ¶ 28-a.)  In addition, Plaintiff's claims are implicitly, or even explicitly, based on the theory that Defendant Kooi and others were *negligent* (in that their medical care deviated from the standard of medical care provided in the general community), which, again, is

---

*Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) ("The subjective element requires a state of mind that is the equivalent of criminal recklessness . . . .") [citation omitted]; *accord, Koehl v. Greene*, 06-CV-0478, 2007 WL 2846905, at *17, n. 98 (N.D.N.Y. Sept. 26, 2007) (Kahn, J.), *Richards v. Goord*, 04-CV-1433, 2007 WL 201109, at *15, n.124 (N.D.N.Y. Jan. 23, 2007) (Kahn, J.), *Salaam v. Adams*, 03-CV-0517, 2006 WL 2827687, at *10, n.59 (N.D.N.Y. Sept. 29, 2006) (Kahn, J.).

[30]      *See also Sonds v. St. Barnabas Hosp. Corr. Health Servs.,* 151 F. Supp.2d 303, 312 (S.D.N.Y. 2001) (prisoner's "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention [with regard to the treatment of his broken finger], are not adequate grounds for a section 1983 claim.  These issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment.") [citation omitted]; *cf. O'Bryan v. Federal Bureau of Prisons*, 07-CV-0076, 2007 U.S. Dist. LEXIS 65287, at *24-28 (E.D.Ky. Sept. 4, 2007) (holding no deliberate indifference where prisoner wore wrist brace/bandage on his broken wrist for two months even though he had asked for a cast; finding that "the type of wrap would only go the difference of opinion between a patient and doctor about what should be done, and the Supreme Court has stated that a difference of opinion regarding the plaintiff's diagnosis and treatment does not state a constitutional claim.").

not actionable under 42 U.S.C. § 1983).  (*Id*. at "Preliminary Statement," ¶¶ 28-a, 30, 69.)  As I

read Plaintiff's complaints about the medical care provided to him by Defendant Kooi (and

others) in this action, I am reminded of what the Second Circuit once observed:

> It must be remembered that the State is not constitutionally obligated,
> much as it may be desired by inmates, to construct a perfect plan for
> [medical] care that exceeds what the average reasonable person would
> expect or avail herself of in life outside the prison walls.  [A]
> correctional facility is not a health spa, but a prison in which convicted
> felons are incarcerated.  Common experience indicates that the great
> majority of prisoners would not in freedom or on parole enjoy the
> excellence in [medical] care which plaintiff[] understandably seeks
> . . . .  We are governed by the principle that the objective is not to
> impose upon a state prison a model system of [medical] care beyond
> average needs but to provide the minimum level of [medical] care
> required by the Constitution. . . .   The Constitution does not command
> that inmates be given the kind of medical attention that judges would
> wish to have for themselves . . . .

*Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986) [internal quotations and citations omitted].

Even setting aside the deficiencies in his allegations, however, Plaintiff's deliberate-indifference

claims should be dismissed since they are devoid of record evidence in support of them.

     For all of these reasons, I recommend that Plaintiff's Eighth Amendment deliberate

indifference claims be dismissed.

     **D.     Whether Plaintiff Has Failed to Adduce Evidence that Defendants Violated
             any of His Rights to Privacy or Confidentiality Through Their Recall of
             Plaintiff's Medications**

     Plaintiff alleges that Defendants McAnany, Kooi, and Burge cooperated with one another

to wrongfully disclose his private medical information to correctional officers and inmates by

issuing a memorandum, on May 24, 2005, directing inmates possessing the medications

Gabapentin or Neurotinin to surrender those medications to correctional officers, and by causing

announcements to be made regarding that recall over the prison's public address system.  (Dkt.

No. 1, Part 1, ¶¶ 44-47, 48-54, 60[d], 64 [Plf.'s Compl.].)  Defendants argue that Plaintiff has

failed to adduce evidence that they violated any of Plaintiff's constitutional rights to privacy or

confidentiality through their recall of the medications Gabapentin and Neurotinin.  (Dkt. No. 46,

Part 4, at 1, 15-17 [Defs.' Memo. of Law].)  Plaintiff has failed to oppose that argument, despite

having been specifically advised of the consequences of failing to do so, and  having been

granted two extensions of the deadline by which to do so.  Based on a review of the record, I find

that Defendants' argument is, at the very least, facially meritorious.  Moreover, even if I were to

scrutinize Defendants' argument under the more rigorous standard appropriate when an argument

is opposed, I would find that Defendants' argument has merit.

        Each of the facts asserted in Defendants' Rule 7.1 Statement regarding the health care that

Plaintiff received at Auburn C.F. are supported by accurate record citations.  (*See* Dkt. No. 46,

Part 3, ¶¶ 41-50 [Defs.' Rule 7.1 Statement].)  Because Plaintiff has failed to controvert those

factual assertions, the assertions are deemed admitted under Local Rule 7.1.  Among other

things, these facts establish as follows: (1) before May 24, 2005, the Auburn C.F. Executive

Team had been informed that the medications Gabapentin and Neurontin were being distributed

in excessively large quantities, that inmates were mixing these medications with other substances

to achieve a "high," and that certain inmates were depriving needy patients of Gabapentin and

Neurontin; (2) on May 24, 2005, Defendant McAnany issued an Inter-Department

Communication to "Inmates Receiving Gabapentin/Neurontin" notifying them that Auburn C.F.

had changed its policy so that these medications could be administered only by nurses, and

directing them to surrender the medications to correctional officers; (3) the May 24, 2005,

memorandum contained no inmate names; (4) the correctional officers who retrieved the medications from the inmates were provided only the name and cell location of the inmates, and the specific drug to be surrendered by the inmates; and (5) the correctional officers were not provided with any private medical information about the inmates, such as the medical condition for which the medication was originally prescribed.

Under these circumstances, there is no record evidence of any violation of Plaintiff's constitutional right to privacy, or his rights under HIPAA.  Both HIPAA and the Supreme Court's interpretation of the constitutional right to privacy recognize that correctional facilities possess a right to disclose (at the very least) limited information about the health of an inmate when doing so is necessary to preserve the health, safety, or order of inmates and/or correctional staff.  *See* 45 C.F.R. § 164.512(k)(5).  (*See also* Dkt. No. 46, Part 4, at 1, 16-17 [Defs.' Memo. of Law] [citing cases].)

For all of these reasons, I recommend that Plaintiff's breach-of-privacy claims be dismissed.

### E.    Whether Plaintiff Has Failed to Adduce Evidence that Defendants Violated any of His Rights Under the Eleventh or Fourteenth Amendments

Plaintiff alleges that Defendants violated his rights under the Eleventh and Fourteenth Amendments.  (Dkt. No. 1, Part 1, ¶¶ "Preliminary Statement," 5, 28-a, 60[c] [Plf.'s Compl.].) Defendants argue that Plaintiff's claims under the Eleventh and Fourteenth Amendments should be dismissed because (1) they are in essence claims of deliberate indifference to a serious medical need under the Eighth Amendment, and (2) those claims are "unsubstantiated by any factual evidence."  (Dkt. No. 46, Part 4, at 17 [Defs.' Memo. of Law].)  Plaintiff has failed to

oppose that argument, despite having been specifically advised of the consequences of failing to

do so, and having been granted two extensions of the deadline by which to do so.  Based on a

review of the record, I agree that Plaintiff's Eleventh and Fourteenth Amendment claims should

be dismissed, although for reasons slightly more detailed than those offered by Defendants.

The Eleventh Amendment to the United States Constitution provides: "The Judicial

power of the United States shall not be construed to extend to any suit in law or equity,

commenced or prosecuted against one of the United States by Citizens of another State, or by

Citizens or Subjects of any Foreign State."  U.S. Const. amend XI.  I can conceive of no way in

which the Eleventh Amendment applies to any of Plaintiff's claims, other than perhaps the

principle of "sovereign immunity" that it embodies (which would only inure to Defendants'

benefit).[31]

As to the Fourteenth Amendment, Defendants are correct that the bulk of Plaintiff's

reliance on that Amendment appears to be in support of his claim of deliberate indifference to a

serious medical need–which was already addressed, and rejected, above in Part III.C. of this

Report-Recommendation.  Similarly, to the extent that Plaintiff is relying on the Fourteenth

Amendment in support of his breach-of-privacy claim (perhaps as a means of making the

protections of another constitutional amendment, such as the Fourth Amendment, applicable to

the states and its employees), that breach-of-privacy claim has also already been addressed, and

rejected, in Part III.D. of this Report-Recommendation.  Furthermore, to the extent that Plaintiff

---

[31]     The Eleventh Amendment has long been construed as barring a citizen from
bringing a suit against his or her own state in federal court, under the fundamental principle of
"sovereign immunity."  *See Hans v. Louisiana*, 134 U.S. 1, 10-21 (1890); *Pennhurst State Sch. &
Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

is relying on the Fourteenth Amendment in support of a claim that one or more Defendants did not follow proper *procedures* in responding to his medical complaints, Plaintiff has not alleged facts plausibly suggesting that he enjoyed any protected liberty interest giving rise to a procedural due process claim the under Fourteenth Amendment.

Finally, to the extent that Plaintiff is relying on the Fourteenth Amendment to support his claim that Defendant Kooi discriminated against him by discontinuing his pain-management medication for his neuropathy condition because Plaintiff needed, and sought, pain-management therapy, Plaintiff fails to allege facts plausibly suggesting that he was intentionally treated differently from others similarly situated as a result of intentional or purposeful discrimination directed at an identifiable or suspect class.  (*See* Dkt. No. 1, Part 1, ¶¶ 28-a, 60[c] [Plf.'s Compl.].)  Being a prisoner who has been prescribed a certain type of pain medication is not a protected classification under the Equal Protection Clause.[32]  Moreover, Plaintiff has not alleged any facts plausibly suggesting that Defendant Kooi acted as he did *because* of a discriminatory motive.[33]  I note that the action in question (as alleged by Plaintiff) was Defendant Kooi's

---

[32]     *See Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997) ("[N]either prisoners nor indigents are [members of a] suspect class . . . .") [citations omitted]; *Holley v. Carey*, 04-CV-2708, 2007 U.S. Dist. LEXIS 64699, *23 (E.D. Cal. Aug. 31, 2007) ("[N]either prisoners nor persons with mental handicaps are a suspect class entitled to heightened scrutiny.") [citations omitted]; *Selah v. Goord*, 04-CV-3273, 2006 U.S. Dist. LEXIS 51051, at *21 (S.D.N.Y. July 24, 2006) ("[T]he mentally ill are [not] a suspect class warranting heightened [or strict] equal protection scrutiny.") [citations omitted]; *Coleman v. Martin*, 363 F. Supp.2d 894, 902 (E.D. Mich. 2005) ("Prisoners are not members of a protected class . . . .") [citation omitted].

[33]     To prove a violation of the Equal Protection Clause, a plaintiff must demonstrate that he was intentionally treated differently from others similarly situated *because of* intentional or purposeful discrimination directed at an identifiable or suspect class.  *Travis v. N.Y. State Div. of Parole*, 96-CV-0759, 1998 U.S. Dist. LEXIS 23417, at *11 (N.D.N.Y. Aug. 26, 1998) (Sharpe, M.J.) [emphasis added], *adopted*, 96-CV-0759, Decision and Order (N.D.N.Y. filed Nov. 2, 1998) (McAvoy, C.J.).

29

issuance of a memorandum to all Auburn C.F. health staff at on August 21, 2003, regarding

"Ultram and narcotics," and stating as follows:

> Please adhere to prescription guidelines and take into consideration the
> side effects and inmate working locations.  Inmates operating
> machinery of any kind should not be placed on Ultram or narcotics.
> Anyone on Ultram will be placed on an EFW.
>
> Narcotics and Ultram should be ordered for a 2 week limit only.
> Renewals will be given only after a physical evaluation is done.
>
> Anyone needing narcotics for pain control will be admitted to the
> infirmary for pain control and observation.

(*Id.* at ¶ 28-a, 60[c]; *see also* Dkt. No. 1, Part 2, at 17 [Ex. F to Plf.'s Compl., attaching

memorandum in question].)

In any event, even setting aside the pleading deficiencies in Plaintiff's equal protection

claim and any procedural due process claim that Plaintiff is trying to assert, those claims should

be dismissed because they are devoid of record evidence in support of them.  Although

Defendants' motion did not specifically address these two claims, Defendants' motion clearly and

repeatedly requested dismissal of Plaintiff's *entire* Complaint.[34]  As a result, Defendants' motion

placed Plaintiff on fair and reasonable notice that he had to come forward with evidence in

support of *all* of his claims; thus, the Court possesses the power to enter summary judgment *sua*

*sponte* on these two claims.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) ("[D]istrict

---

[34]      (Dkt. No. 46, Part 1, at 1 [Defs.' Notice of Motion, notifying Plaintiff that
Defendants' motion "is directed to all claims raised against said defendants in the complaint"];
Dkt. No. 46, Part 2, at 2 [Moran Affirm., asserting that Defendants "are entitled to judgment as a
matter of law," and requesting that "the relief sought by plaintiff be denied"]; Dkt. No. 46, Part 4,
at 1, 24, 25 [Defs.' Memo. of Law, arguing that "the complaint should be dismissed," and "the
action against the defendants should be dismissed," and **THE RELIEF SOUGHT BY
PLAINTIFF MUST BE DENIED**"] [emphasis in original].)

courts are widely acknowledged to possess the power to enter summary judgments *sua sponte,* so long as the losing party was on notice that she had to come forward with all of her evidence.") [citations omitted]. Here, the Court should do so, since the record is devoid of any evidence in support of these two claims.

For all of these reasons, I recommend that Plaintiff's claims under the Eleventh and Fourteenth Amendments be dismissed.

> **F.      Whether Plaintiff Has Failed to Allege any Facts Plausibly Suggesting, and/or Failed to Adduce Evidence Establishing, that Defendant Kooi Retaliated Against Him for Engaging in Protected Activity**

Plaintiff alleges that Defendant Kooi retaliated against him for engaging in constitutionally protected activity, specifically, making various of the above-described complaints about his medical care. (Dkt. No. 1, Part 1, ¶¶ 30, 32, 35, "Wherefore" Section & "Preliminary Statement" [Plf.'s Compl., citing the First Amendment among the constitutional provisions under which his claims arise].) Although Defendants do not address this claim in their memorandum of law, their failure to do so is completely understandable since Plaintiff's First Amendment claim is evident only upon a reading by the Court of Plaintiff's Complaint with *extra*-liberal leniency. (*See*, *supra*, note 2 of this Report-Recommendation.) In any event, Defendants' omission in their motion does not insulate Plaintiff's First Amendment claim from review by the Court.

This is because, under the circumstances, the Court is able to *sua sponte* address the pleading sufficiency of Plaintiff's First Amendment claim. This authority is derived from two sources: (1) 28 U.S.C. § 1915(e)(2)(B)(ii), which provides that "the court shall dismiss [a] case [brought by a prisoner proceeding *in forma pauperis*] at any time if the court determines that . . .

the action . . . is frivolous or malicious[,] . . . fails to state a claim on which relief may be

granted[,] . . . or . . . seeks monetary relief against a defendant who is immune from such relief";

and (2) 28 U.S.C. § 1915A(b), which provides that, "[o]n review, the court shall . . . dismiss the

[prisoner's] complaint, or any portion of the complaint, if the complaint . . . is frivolous,

malicious, or fails to state a claim upon which relief may be granted . . . ."  28 U.S.C. §§

1915(e)(2)(B)(ii), 1915A(b).

 Claims of retaliation like those asserted by Plaintiff find their roots in the First

Amendment.  *See Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004).  Central to such

claims is the notion that in a prison setting, corrections officials may not take actions which

would have a chilling effect upon an inmate's exercise of First Amendment rights.  *See Gill*, 389

F.3d at 381-383.  Because of the relative ease with which claims of retaliation can be incanted,

however, courts have scrutinized such retaliation claims with particular care.  *See Flaherty v.*

*Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).  As the Second Circuit has noted,

> [t]his is true for several reasons.  First, claims of retaliation are
> difficult to dispose of on the pleadings because they involve questions
> of intent and are therefore easily fabricated.  Second, prisoners' claims
> of retaliation pose a substantial risk of unwarranted judicial intrusion
> into matters of general prison administration.  This is so because
> virtually any adverse action taken against a prisoner by a prison
> official--even those otherwise not rising to the level of a constitutional
> violation--can be characterized as a constitutionally proscribed
> retaliatory act.

*Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citations omitted), *overruled on other*

*grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

 To prevail on a First Amendment claim under 42 U.S.C. § 1983, a Plaintiff must prove by

the preponderance of the evidence that: (1) the speech or conduct at issue was "protected"; (2)

32

the defendants took "adverse action" against the plaintiff–namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action--in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff.  *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill*, 389 F.3d at 380 (citing *Dawes v. Walker*, 239 F.3d 489, 492 [2d. Cir. 2001]).  Under this analysis, adverse action taken for both proper and improper reasons may be upheld if the action would have been taken based on the proper reasons alone.  *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) [citations omitted].

Here, for the sake of brevity, I will assume that Plaintiff's complaints about his medical care constituted constitutionally "protected" activity.  The problem with Plaintiff's First Amendment claim is that he has alleged no facts plausibly suggesting that either (1) Defendant Kooi took "adverse action" against him, or (2) that any such adverse action was *caused* by Plaintiff's protected speech.

Finally, even if Plaintiff had alleged such facts, and the Court were to find that Plaintiff has adequately pled a First Amendment retaliation claim, the Court would be able to review the evidentiary sufficiency of that claim, under the circumstances.  As explained above in Part III.E. of this Report-Recommendation, although Defendants' motion did not specifically address Plaintiff's First Amendment claim, Defendants' motion clearly and repeatedly requested dismissal of Plaintiff's *entire* Complaint.  As a result, Defendants' motion placed Plaintiff on fair and reasonable notice that he had to come forward with evidence in support of *all* of his claims; thus, the Court possesses the power to enter summary judgment *sua sponte* on Plaintiff's First

33

Amendment claim.  Here, the Court should do so, since the record is devoid of any evidence in support of Plaintiff's First Amendment retaliation claim.

For all of these reasons, I recommend that Plaintiff's First Amendment retaliation claim be dismissed.

**G.     Whether Plaintiff Has Failed to Adduce Evidence that Defendants Goord, Wright, Burge and Collette Were Personally Involved in the Constitutional Violations Alleged**

Because I have already concluded that adequate grounds exist upon which to base a recommendation that Plaintiff's Complaint be dismissed, I need not, and do not, reach the merits of Defendants' alternative argument that Plaintiff has failed to establish that Defendants Goord, Wright, Burge and Collette were personally involved in the constitutional violations alleged other than to report that I find that Defendants' argument has, at the very least, facial merit.  (Dkt. No. 46, Part 4, at 19-23 [Defs.' Memo. of Law].)

**H.     Whether the Court Should Decline to Exercise Supplemental Jurisdiction over Plaintiff's Pendent State Law Claims**

In addition to asserting claims under the United States Constitution, Plaintiff has asserted various claims under Article 1, Sections 4, 6 and 11 of the New York State Constitution.  (Dkt. No. 1, Part 1, ¶¶ 1, 5, 47, 48 [Plf.'s Compl.].)  Defendants argue that the Court should decline to exercise supplemental jurisdiction over Plaintiff's pendent state law claims because (1) grounds exist supporting the dismissal of Plaintiff's federal claims, and (2) Plaintiff's state law claims lack evidentiary support for the same reasons as do his federal claims.  (Dkt. No. 46, Part 4, at 17-18 [Defs.' Memo. of Law].)  Plaintiff has failed to oppose that argument, despite having been specifically advised of the consequences of failing to do so, and  having been granted two

extensions of the deadline by which to do so.  Based on a review of the record, I find that

Defendants' argument is, at the very least, facially meritorious.  Moreover, even if I were to

scrutinize Defendants' argument under the more rigorous standard appropriate when an argument

is opposed, I would find that Defendants' argument has merit.[35]

     For all of these reasons, I recommend that Plaintiff's pendent state law constitutional

claims be dismissed.

### I.     Whether Defendants Are Protected from Liability, as a Matter of Law, by the Doctrine of Qualified Immunity

     Because I have already concluded that adequate grounds exist upon which to base a

recommendation that Plaintiff's Complaint be dismissed, I need not, and do not, reach the merits

of Defendants' alternative argument that they are protected from liability by the doctrine of

qualified immunity other than to report that I find that Defendants' argument has, at the very

least, facial merit.  (Dkt. No. 46, Part 4, at 23-24 [Defs.' Memo. of Law].)

### J.     Denial of Any Request by Plaintiff, During any Appeal from this Report-Recommendation, to Supplement the Record on Defendants' Motion

     In the event that, during any objections to this Report-Recommendation, Plaintiff

attempts to supplement the record on Defendants' Motion for Summary Judgment, I respectfully

---

[35]     *See Porter v. Lincoln City*, 59 Fed. Appx. 985, 986 (9th Cir. March 23, 2003) (affirming district court's decision to decline to exercise supplemental jurisdiction over inmate's pendent state law claims for fraud, misrepresentation, libel, and slander, after district court concluded that inmate's federal due process claim should be dismissed, in civil rights action under 42 U.S.C. § 1983); *Rennick v. U.S.*, 05-CV-0339, 2005 U.S. Dist. LEXIS 34695, at *2, 12-18 (E.D. Ky. Dec. 20, 2005) (declining to exercise jurisdiction over inmate's state law claims for fraud and misrepresentation, after court found reason to *sua sponte* dismiss inmate's federal due process claim, in civil rights action under 42 U.S.C. § 1983); *Parsons v. Pond*, 126 F. Supp.2d 205, 223 (D. Conn. 2000) (declining to exercise supplemental jurisdiction over parolee's pendent state law claim for fraudulent misrepresentation, after court found reason to dismiss inmate's federal civil rights claim under 42 U.S.C. § 1983).

recommend that the Court, in exercising its discretion on the matter, decline to permit him to do so.

The Second Circuit recognizes that the decision of whether or not to accept such evidence rests in the sound discretion of the district court. *See*, *e.g.*, *Hynes v. Squillance*, 143 F.3d 653, 656 (2d Cir. 1998) ("[W]e have upheld the exercise of the district court's discretion in refusing to allow supplementation of the record upon the district court's *de novo* review.") (affirming decision by Scullin, J.) [citations omitted].  In deciding whether or not a district court has abused that discretion in denying the supplementation of the record on appeal, the Second Circuit considers factors such as efficiency and fairness. *See Hynes v. Squillance*, 143 F.3d at 565 ("Considerations of efficiency and fairness militate in favor of a full evidentiary submission for the Magistrate Judge's consideration . . . .").

With regard to the efficiency consideration, I find that permitting Plaintiff (on appeal) to adduce evidence that was not presented before me would be an inefficient use of judicial resources, and indeed would "frustrate the purpose of the Magistrates Act." *Greenhow v. Sec'y of Health & Human Servs.*, 863 F.2d 633, 638-39 (9th Cir. 1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds by U.S. v. Hardesty*, 977 F.2d 1347 (9th Cir. 1992).

With regard to the fairness consideration, I note that the Fifth Circuit has suggested four factors that a court might consider in deciding whether to accept additional evidence after a magistrate judge's recommendation has been issued:

> (1) the moving party's reasons for not originally submitting the
> evidence; (2) the importance of the omitted evidence to the moving
> party's case; (3) whether the evidence was previously available to the
> non-moving party when it responded to the summary judgment
> motion; and (4) the likelihood of unfair prejudice to the non-moving
> party if the evidence is accepted.

*Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F,3d 847, 862 (5th Cir. 2003)

[citation omitted].  Generally, these fairness factors are considered by Courts within the Second

Circuit (and outside of the Second Circuit).[36]  Here, I find that these four fairness factors–

particularly the third and fourth factors–weigh against permitting Plaintiff to supplement the

record on Defendants' motion for summary judgment during any appeal to the District Court

from this Report-Recommendation.  Plaintiff has had a full and fair opportunity to be heard on

his claims, including a full and fair opportunity to (1) conduct discovery in this matter,[37] and (2)

---

[36]      *See, e.g., Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994)
("In objecting to a magistrate's report before the district court, a party has no right to present
further testimony when it offers no justification for not offering the testimony at the hearing
before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World
Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40 n.3 (2d Cir. 1990) (district court did not
abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff
"offered no justification for not offering the testimony at the hearing before the magistrate");
*Alexander v. Evans,* 88-CV-5309, 1993 WL 427409, at *18 n.8 (S.D.N.Y. Sept. 30, 1993)
(declining to consider affidavit of expert witness that was not before magistrate) [citation
omitted]; s*ee also Murr v. U.S.*, 200 F.3d 895, 902, n.1 (6th Cir. 2000) ("Petitioner's failure to
raise this claim before the magistrate constitutes waiver."); *Marshall v. Chater*, 75 F.3d 1421,
1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's
recommendations are deemed waived.") [citations omitted]; *Cupit v. Whitley*, 28 F.3d 532, 535
(5th Cir. 1994) ("By waiting until after the magistrate judge had issued its findings and
recommendations [to raise its procedural default argument] . . . Respondent has waived the
procedural default . . . objection[].") [citations omitted]; *Patterson-Leitch Co. Inc. v. Mass. Mun.
Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988) ("[A]n unsuccessful party is not
entitled as of right to de novo review by the judge of an argument never seasonably raised before
the magistrate.") [citation omitted].

[37]      (*See, e.g.*, Dkt. No. 21 [Pretrial Scheduling Order filed July 12, 2006, establishing
six and-a-half months until expiration of discovery period, on January 30, 2007]; Dkt. No. 28

respond with evidence and argument to Defendants' motion for summary judgment.[38]
Defendants are entitled to have their motion decided on a level playing field, based on evidence
and arguments to which they could properly reply, under the Federal Rules of Civil Procedure
and Local Rules of Practice.

For these reasons, I recommend that the Court, in exercising its discretion on the issue,
deny any request by Plaintiff to supplement the record on Defendants' motion for summary
judgment, during any objections to this Report-Recommendation.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 46) be
**GRANTED**, and that Plaintiff's Complaint be **DISMISSED** with prejudice.

**ANY OBJECTIONS to this Report-Recommendation must be filed with the Clerk
of this Court within TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS
from the date of this Report-Recommendation (unless the third calendar day is a legal
holiday, in which case add a fourth calendar day)**.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.
72(b); N.D.N.Y. L.R. 72.1(c); Fed. R. Civ. P. 6(a)(2), (d).

---

[Order filed Oct. 11, 2006, extending discovery deadline to March 30, 2007]; Dkt. No. 35 [Order
filed Apr. 25, 2007, granting in part Plf.'s Motion to Compel Discovery].)

[38]      (Dkt. Nos. 47, 49 [Orders filed Sept. 13, 2007, and October 18, 2007, granting Plf.
extension of deadline by which he had to respond to Defs.' motion for summary judgment].)  I
note this action has been pending now since October 3, 2005, long past the eighteen months
envisioned by Congress when the Civil Justice Reform Act of 1990 was passed.  *See Adelman v.
Hobbie*, 03-CV-0032, 2006 WL 2639359, at *8 (N.D.N.Y. Sept. 13, 2006) (Sharpe, J., adopting
Report-Recommendation by Treece, M.J.) (dismissing *pro se* civil rights action for failure to
prosecute under Rule 41[b] in part because "[o]ver three years has passed since this litigation was
commenced, well past the eighteen months envisioned by Congress when the Civil Justice
Reform Act of 1990 was instituted").

**BE ADVISED that the District Court, on** *de novo* **review, will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but were not, presented to the Magistrate Judge in the first instance.**[39]

**BE ALSO ADVISED that the failure to file timely objections to this Report-Recommendation will PRECLUDE LATER APPELLATE REVIEW of any Order of judgment that will be entered**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of H.H.S.*, 892 F.2d 15 [2d Cir. 1989]).

Dated: August 20, 2008
         Syracuse, New York

George H. Lowe
United States Magistrate Judge

---

[39]      *See, supra*, note 36 of this Report-Recommendation.